UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------------------x
CAROL D. FABER and the ESTATE OF RUSSELL       :
E. YOUNG, by and through its duly appointed           :
ADMINISTRATOR, TONIA M. RAY, individually       :
and on behalf of all others similarly situated,              :         08 Civ. 10588 (HB)
                                                                                       :
         Plaintiffs,                  :
                                                                                       :         OPINION & ORDER
    - against -                                           :
                                                                                       :
METROPOLITAN LIFE INSURANCE COMPANY,   :
                                                                                       :
         Defendant.                 :
-----------------------------------------------------------------------------------x

**Hon. HAROLD BAER, JR., District Judge:**

  Plaintiffs Carol D. Faber ("Faber") and the Estate of Russell E. Young ("Young Estate") (collectively, "Plaintiffs") bring this putative class action alleging a single cause of action: that the use of a "Total Control Account" ("TCA") by Metropolitan Life Insurance Company ("MetLife") to distribute death benefits constitutes a breach of fiduciary duties under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1104(a), 1106(b)(1). MetLife has moved to dismiss Plaintiffs' Amended Complaint based on several arguments, each of which, MetLife asserts, is an independent ground for dismissal. To wit, MetLife argues that (1) Plaintiffs lack standing to bring their ERISA claim; (2) MetLife's use of a TCA is not a breach of fiduciary duty and thus Plaintiffs have failed to state a claim under Rule 12(b)(6); (3) Plaintiffs seek damages not cognizable under ERISA; and (4) the ERISA claim is time-barred as to Plaintiff Faber. For the reasons set forth below, MetLife's motion is granted, and Plaintiffs' Amended Complaint is dismissed.

### I. FACTUAL BACKGROUND[1]

  Plaintiffs were both beneficiaries of group life insurance welfare benefit plans that are regulated and governed by ERISA: Plaintiff Faber was the beneficiary of a plan sponsored by her

---

[1] This account of the factual background is garnered from the allegations of the Amended Complaint, as well as the terms of the Plans involved in this case. In considering a motion to dismiss, the Court may consider documents attached as an exhibit to the complaint or incorporated into the complaint by reference, documents that are integral to the plaintiff's claims, even if not explicitly incorporated by reference, and matters of which judicial notice may be taken. *See* Fed. R. Civ. P. 10(c); *De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 69 (2d Cir. 1996); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 46-48 (2d Cir. 1991); *Thomas v. Westchester County Health Care Corp.*, 232 F. Supp. 2d 273, 275 (S.D.N.Y. 2002). Specifically in the ERISA context, "[b]ecause the Plan is directly referenced in the complaint and is the basis of this action, the Court may consider the Plan in deciding the motion to dismiss." *Steger v. Delta Airlines, Inc.*, 382 F. Supp. 2d 382, 385 (E.D.N.Y. 2005).

1

late husband's employer the Eastman Kodak Company (the "Kodak Plan") and the Young Estate was the beneficiary of a plan sponsored by the late Russell E. Young's employer the General Motors Corporation (the "GM Plan"). Both the Kodak Plan and the GM Plan were funded with group life insurance policies issued by MetLife. The two plans are substantially similar and both provide for the establishment of a TCA. Under the Plans, if the amount of death benefits payable exceeds a specified amount, a TCA is established in the name of the beneficiary, and the beneficiary is provided with a personalized "checkbook" that he or she can use to draw on the TCA for any or all of the funds in the TCA at any time. The Kodak Summary Plan Description ("SPD") states that "[p]ayment of a death benefit of $7,500 or more is made under MetLife's [TCA]. The death benefit amount is deposited in an interest bearing money market account and your beneficiary is provided with a checkbook to use for writing checks to withdraw funds." The GM Plan SPD similarly provided that "[i]f the benefit from a single claim is $6,000, or more, your beneficiary may receive basic life insurance benefits under one of several options available under the Beneficiary's Total Control Account (TCA) Program . . . A personalized checkbook allows your beneficiary to easily use all, or a portion, of the money. Funds left with the insurance company earn interest at competitive rates." While a beneficiary's funds are in the TCA, it is "guaranteed" by MetLife. Moreover, funds in the TCA earn interest at market rates, but beneficiaries under the Kodak and GM Plans are guaranteed to receive a minimum of 1.5% interest per annum.

Plaintiffs allege that although they understood that the funds in their TCA would be transferred into a money market account at a bank, MetLife concealed the fact that it "retains and invests the proceeds for its own account," and that MetLife only deposits any amount of death benefits into the TCA upon the presentment of a check for payment from a beneficiary. Thus, Plaintiffs allege that "[u]ntil a beneficiary draws a check on his or her Total Control Account and the check is paid, legal title to and actual possession of the funds are retained by MetLife and MetLife has the use of the funds for its own benefit." As a result, Plaintiffs allege that MetLife earns a profit based on the interest that it earns by investing the money in the TCA's. That is, Plaintiffs allege that MetLife earns more managing and investing the funds than it pays out in interest to the beneficiaries. Plaintiffs claim that MetLife, as a fiduciary of the Plans, was not entitled to make a profit by reinvesting the benefits for their own account and that Plaintiffs and those similarly situated are therefore entitled to recover this profit and to enjoin MetLife from similar conduct in the future.

In this case, after the deaths of the respective plan participants, Faber and the Young Estate filed claims for benefits under the Plans, both of which were approved. Both Plaintiffs received substantially similar letters advising them of the establishment of the TCA's in their names. Faber received three letters – one of which is not dated and the other two of which were dated June 30, 2004 – that informed her that a total of $393,651.90 had been added to her TCA. The Young Estate received a similar letter, also undated, that indicated that the Young Estate's opening balance in its TCA was $42,765.48. Within a few months of its inception, the Young Estate withdrew all proceeds and closed its TCA. Faber, on the other hand, has made several withdrawals from her TCA, but she maintains a positive balance to this day.

## II. DISCUSSION

### A.     Legal Standards under Rules 12(b)(1) and 12(b)(6)

In considering a motion to dismiss under Rule 12(b)(1) for lack of standing, this Court "must accept as true all material allegations of the complaint and must construe the complaint in favor of the complaining party." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 263 (2d Cir. 2006). The requirement that a plaintiff demonstrate constitutional standing is a jurisdictional prerequisite to suit in federal court. Thus, if Plaintiffs lack standing under Article III of the U.S. Constitution, there is no subject matter jurisdiction and the Court must dismiss this case. *See Shain v. Ellison*, 356 F.3d 211, 215 (2d Cir. 2004) ("If [plaintiff] lacks standing, we lack subject matter jurisdiction to entertain a request for such relief."); Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action.").

Similarly, to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The court's determination of whether a complaint states a "plausible claim for relief" is a "context-specific inquiry" that requires application of "judicial experience and common sense." *Id.* Unless a plaintiff's well-pleaded allegations have "nudged [its] claims across the line from conceivable to plausible, [the plaintiff's] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

**B.      Standing**

MetLife argues that Plaintiffs lack both constitutional and statutory standing to bring their ERISA claim. That is, MetLife contends that Plaintiffs lack standing under Article III of the U.S. Constitution because they have not alleged a cognizable injury-in-fact, and that they lack standing under the express terms of ERISA because they are not "participants, beneficiaries or fiduciaries" under § 1132(a)(3). A plaintiff suing under ERISA must establish both types of standing in order to sue under the statute. *See Kendall v. Employees Retirement Plan of Avon Prods.*, 561 F.3d 112, 118 (2d Cir. 2009). Because constitutional standing is a question of whether the court has jurisdiction to determine the merits of an action, this inquiry is addressed first in the court's analysis. *LaFleur v. Whitman*, 300 F.3d 256, 268 (2d Cir. 2002); *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998).

*1. Constitutional Standing under Article III*

Article III, section 2 of the U.S. Constitution restricts federal courts to deciding "Cases" and "Controversies." To establish Article III standing, a plaintiff must allege, and ultimately prove, that he has suffered a cognizable injury-in-fact that is fairly traceable to the challenged action of the defendant, and which is likely to be redressed by the requested relief. *Baur v. Veneman*, 352 F.3d 625, 632 (2d Cir. 2003). To qualify as a constitutionally sufficient injury-in-fact, an asserted injury must be (a) concrete and particularized and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" *Lujan v. National Wildlife Fed'n*, 504 U.S. 555, 560 (1992); *Baur*, 352 F.3d at 632. In evaluating whether an alleged injury is concrete and particularized, courts look to whether the injury affects the plaintiff "in a personal and individual way to confirm that the plaintiff has a personal stake in the controversy." *Baur*, 352 F.3d at 632; *Lujan*, 504 U.S. at 560 n.1. The requirement that an injury be concrete recognizes that "if an injury is too abstract, the plaintiff's claim may not be capable of, or otherwise suitable for, judicial resolution." *Baur*, 352 F.3d at 632 (internal quotations and citations omitted). As the Second Circuit recently held, "the filing of a suit as a class action does not relax [the] jurisdictional requirement" of standing on the part of the named plaintiffs. *Denney*, 443 F.3d at 263; *see also O'Shea v. Littleton*, 414 U.S. 488, 494 (1974). Plaintiffs bear the burden to establish the elements that support standing. *Lujan*, 504 U.S. at 561.

In the specific context of ERISA causes of action, the Second Circuit has recently expressly drawn a distinction between constitutional standing to bring a claim for injunctive relief and constitutional standing to bring a claim for the remedy of disgorgement or restitution. As to

the former remedy, the Second Circuit held that standing to bring an ERISA claim for injunctive relief is to be viewed broadly, and a plaintiff need not demonstrate actual harm to have standing to seek such relief. *See Central States Southeast & Southwest Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 199-200 (2d Cir. 2005). With respect to claims for restitution and/or disgorgement, the Second Circuit found that to obtain such relief, "ERISA requires that a plaintiff satisfy the strictures of constitutional standing by demonstrating individual loss; to wit, that they have suffered an injury in fact." *Id.* at 200 (internal citations and quotation marks omitted); *see also Kendall*, 561, F.3d at 119-20, 121. To have standing to bring a claim for restitution or disgorgement as a result of an alleged breach of fiduciary duties under ERISA, therefore, plaintiffs "must show that they were injured by the alleged breach of the duty." *Kendall*, 561 F.3d at 120. It is not sufficient for a plaintiff to claim that he was injured by the breach of the duty itself; rather, he must show a particularized injury to himself. *Id.* at 121.

In this case, Plaintiffs seek both disgorgement of allegedly illicit profits MetLife earned by reinvesting money in Plaintiffs' TCA's,[2] as well as an injunction to prevent MetLife from engaging in such conduct in the future. MetLife asserts that Plaintiffs lack Article III standing to bring these claims because the Amended Complaint alleges no personal loss or injury to either Plaintiff, and both Plaintiffs have conceded that they enjoyed all the rights and privileges owed to them under the Kodak and GM Plans. Moreover, MetLife asserts that Plaintiffs lack standing to seek an injunction because the remedy they seek could by obtained through self-help – *i.e.*, by using their "checkbooks" to draw on their TCA's in the full amount of their benefits. Plaintiffs counter that the injury-in-fact requirement has been met here because they have alleged that MetLife was unjustly enriched, and Plaintiffs were injured, in the amount of the difference between the interest that MetLife paid to Plaintiffs in connection with their TCA's and the amount that it earned by reinvesting Plaintiffs' benefits. Because Plaintiffs seek two types of remedies, under the Second Circuit's bifurcated analysis espoused in *Central States* and *Kendall*, the Court addresses standing with respect to each remedy separately.

With respect to disgorgement, Plaintiffs essentially contend that they have been injured because MetLife has breached its fiduciary duties.[3] Unfortunately for Plaintiffs, the Second

---

[2] Under the Plan, Plaintiffs were entitled to – and did – earn interest on their death benefits in the TCA's at the market rate, with a guaranteed minimum rate of 1.5%. The amount that Plaintiffs seek to recover in this action, therefore, is the amount that MetLife earned over and above what it owed to Plaintiffs under the Plan.

[3] Indeed, at oral argument on the instant motion Plaintiffs' counsel articulated the injury in this case as the

Circuit only recently squarely rejected this reasoning when it held that plaintiffs "cannot claim that either an alleged breach of fiduciary duty to comply with ERISA, or a deprivation of [their] entitlement to that fiduciary duty, in and of themselves constitutes an injury-in-fact sufficient for constitutional standing." *Kendall*, 561 F.3d at 121; *see id.* at 120 ("[ERISA] does impose a general fiduciary duty to comply with ERISA, but it does not confer a right to every plan participant to sue the plan fiduciary for alleged ERISA violations without a showing that they were injured by the alleged breach of the duty.") (citing *Flanigan v. General Elec. Co.*, 242 F.3d 78, 85-86 (2d Cir. 2001)). Thus, the court found that "Article III standing ultimately turns on whether a plaintiff gets something (other than moral satisfaction) if the plaintiff wins." *Id.* at 122 (quoting *Drutis v. Rand McNally & Co.*, 499 F.3d 608, 612 (6th Cir. 2007)). Here, Plaintiffs' claims that they were injured by MetLife's alleged breach of fiduciary duty as a result of its reinvestment of Plaintiffs' benefits under the Plans fail to articulate any cognizable injury or anything that Plaintiffs would get if they succeeded, other than the moral satisfaction of a declaration that they were justified in their allegations. Under the clear holding in *Kendall*, this is simply not enough.

Plaintiffs attempt to distinguish *Kendall* and points "to an identifiable and quantifiable pool of assets to which they [have] colorable claims," while the plaintiff in *Kendall* could not. *See id.* at 121. That is, Plaintiffs claim to be entitled to the excess profits that MetLife earned through reinvestment of the beneficiaries' funds. However, this argument must fail for two reasons. First, by Plaintiffs' own tacit admission at oral argument, this pool of funds to which they claim entitlement is not "identifiable and quantifiable;" rather, to identify and quantify any measure of relief for the Plaintiffs would require an accounting to determine what amount of funds allegedly should be reclaimed by the Plaintiffs and the putative class. *See* Tr. at 27:24-28:11 ("We have the identifiable fund. It's the general account . . . The remedy would be an accounting in terms of what has happened to the money, and then a decision of what the disgorgement would be."); *see also Fenwick v. Merrill Lynch & Co., Inc.*, 570 F. Supp. 2d 366, 374 (D. Conn. 2008) ("Decisional law within the Second Circuit has rejected claims where the plaintiff advanced requests for money

---

alleged failure of MetLife, as the fiduciary, to live up to its fiduciary obligations. *See* Transcript of Oral Argument dated October 5, 2009 ("Tr.") at 23:5-11 ("THE COURT: Where is the injury? . . . Where did you lose out here? MR. BELL: A fiduciary who makes money on his beneficiaries' money, it's the beneficiaries' money and . . . what they are entitled to under ERISA is a fiduciary who follows the law."); *see also id.* at 30:3-10 ("[Plaintiffs] were entitled to a fiduciary who managed their benefits for their own benefit, and they were denied that . . . That denial is an injury . . . [W]hen a fiduciary violates his duty to uphold their interest, that's a serious injury to the beneficiary. . . .").

owed but failed to identify a particular fund possessed by the defendant.") (collecting cases). Second, and perhaps even more importantly, Plaintiffs do not – and cannot – deny that they have received the full amount of benefits to which they were entitled under the Kodak and GM Plans. That is, Plaintiffs were entitled as beneficiaries to a specified amount of death benefits that would be available to them upon the death of the Plan participant, and each Plaintiff received a TCA into which that amount of money was deposited and a "checkbook" that enabled them to withdraw the full amount of benefits at any time they so chose. Other than the right to earn interest at the market rate, the Plans never articulated any other benefit to which Plaintiffs were entitled. Put another way, there is no bargained-for benefit under the Plans that either Plaintiff has claimed was not provided. Thus, although Plaintiffs claim to be entitled to the additional amounts that they allege represent the extent to which MetLife was unjustly enriched due to its breach of duty, the recovery of that amount is simply not due to Plaintiffs under ERISA. As the Second Circuit has instructed, "[t]he aim of ERISA is to make the plaintiffs whole, but not to give them a windfall." *Henry v. Champlain Enters., Inc.*, 445 F.3d 610, 624 (2d Cir. 2006) (citation omitted). Here, in seeking disgorgement of a pool of funds that has yet to be identified or quantified, over and above the amount of benefits to which they were entitled under the terms of the Plans, Plaintiffs have failed to show an injury-in-fact that arises under ERISA. That is, Plaintiffs have failed to satisfy their burden to show that they have constitutional standing to bring their claim for disgorgement under ERISA's breach of fiduciary duty provisions, and insofar as their claim seeks that remedy, it must be dismissed.

With respect to their claim for injunctive relief, however, Plaintiffs need not articulate any actual harm to have standing. *Central States*, 433 F.3d at 199-200. Thus, under this Circuit's broad view of standing to bring a claim for injunctive relief under ERISA, I find that Plaintiffs have sufficiently alleged that they have constitutional standing to bring such a claim. Although MetLife protests that Plaintiffs can remedy the very harm they allege by writing themselves a check for the entire balance of benefits in their TCA's, it has cited no authority that would mandate that Plaintiffs do so in such a case. Further, to engage in such "self-help" would deprive Plaintiffs of the very salutary benefits of the TCA program that MetLife itself touts as being made available to them, including but not limited to the accrual of a interest at a guaranteed rate, a guarantee of benefits for the life of the TCA, and instant access to the full balance of their benefits by use of their personalized "checkbook." Accordingly, I find that Plaintiffs have sufficiently alleged that they have constitutional standing to pursue their claim for injunctive relief.

7

### *2. Statutory Standing under ERISA § 502*

However, to find that Plaintiffs have statutory standing on this aspect of their claim does not end the inquiry. As noted, Plaintiffs also must establish that they have statutory standing under ERISA to bring their claim against MetLife. Plaintiffs bring their claim under ERISA section 502(a)(3), which provides that a civil action for injunctive or other equitable relief may be brought "by a participant, beneficiary, or fiduciary." 29 U.S.C. § 1132(a)(3). The Second Circuit has taken a narrow view of this threesome, and has found that only individuals who fall within the enumerated categories may bring a claim under ERISA, with some narrow exceptions not relevant here. *See Pressroom Unions-Printers League Income Sec. Fund v. Continental Assurance Co.*, 700 F.2d 889, 892 (2d Cir. 1983). In this case the only potential category into which Plaintiffs claim to fall is that of ERISA beneficiaries. A "beneficiary" under ERISA is "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." *Id.* § 1002(8). MetLife contends that because Plaintiffs received all the benefits to which they were entitled and have no reasonable expectation of any additional benefits under the Plans, they are no longer "beneficiaries" under ERISA and thus lack standing. Plaintiffs rejoin that they are beneficiaries under the Kodak and GM Plans because they have a colorable claim to recover MetLife's "ill-gotten" profits if they prevail on their claims and that they therefore have standing to bring their claim under ERISA. In support of this argument, Plaintiffs cite to a twenty-year-old Ninth Circuit case that held that statutory standing under ERISA is sufficient where a former participant has a colorable claim to a defendant's "ill-gotten profits" by way of a constructive trust. *See Amalgamated Clothing & Textile Workers Union, AFL-CIO v. Murdock*, 861 F.2d 1409, 1417-19 (9th Cir. 1988). The strength of *Murdock*'s authority in this case is dubious, as it involved former participants and not former beneficiaries as we have here,[4] and in any event it was decided almost fifteen years before the Supreme Court's decision in *Great-West Life & Annuity Insurance Co. v. Knudson*, 534 U.S. 204, 210 (2002), in which the Court held that disgorgement in the form of a constructive trust is a legal, not equitable, remedy and cannot

---

[4] Indeed, neither party has cited any case that is directly on point in this regard. It should be noted, however, that the Court has identified at least some cases that have addressed MetLife's view on a former beneficiary's lack of statutory standing. *See Leuthner v. Blue Cross & Blue Shield of Northeastern Pa.*, 454 F.3d 120 (3d Cir. 2006) (affirming dismissal of former beneficiary's ERISA claim for lack of standing); *see also Alves v. Harvard Pilgrim Health Care, Inc.*, 204 F. Supp. 2d 198, 205-07 (D. Mass. 2002) (discussing, but not deciding, whether former beneficiary has standing to sue under ERISA § 1132(a)(3)).

form the basis of statutory standing under ERISA § 1132(a)(3).[5]  *See also Augienello v. Coast-to-Coast Fin. Corp.*, 01 Civ. 11608, 2002 U.S. Dist. LEXIS 14584, at *15-17 (S.D.N.Y. Aug. 12, 2002), *aff'd*, 2003 U.S. App. LEXIS 8770 (2d Cir. May 9, 2003).  Moreover, Plaintiff's argument under *Murdock* does nothing to address their status as former beneficiaries with respect to their claim for injunctive relief.  It is worth noting here that this Court finds it difficult to credit Defendant's position that a party that was once a beneficiary in days gone by cannot sue for breach of fiduciary duties if he learns that his benefits were stolen or misused.  However, because statutory standing, unlike Article III standing, may be presumed to exist for the purposes of determining whether a plaintiff has stated a viable claim under ERISA, *see Coan v. Kaufman*, 547 F.3d 250, 256 (2d Cir. 2006), I need not decide at this juncture whether Plaintiffs have statutory standing and proceed to consider the merits of their ERISA claim.

C.      **Failure to State a Claim**

Assuming Plaintiffs did have the requisite constitutional and statutory standing to bring an ERISA claim, the Amended Complaint must nonetheless be dismissed because Plaintiffs' allegations fail to state a cause of action for breach of fiduciary duties under ERISA.  Here, Plaintiffs have based their claim on two provisions of ERISA.  First, Plaintiffs argue that MetLife's reinvestment of the beneficiaries' funds was intended to further MetLife's own interests and thus violated its obligation to "discharge [its] duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . for the exclusive purpose of (i) providing benefits to participants and beneficiaries."  29 U.S.C. § 1104(a)(1)(A).  Additionally, by retaining the beneficiaries' funds and reinvesting them, Plaintiffs contend that MetLife violated its duty to "not . . . deal with the assets of the plan in [its] own interest or for its own account."  *Id.* § 1106(b)(1).

MetLife makes several arguments in support of its position that its use of a TCA does not constitute a fiduciary breach.[6]  First, MetLife argues that the express terms of the Kodak and GM

---

[5] This point echoes MetLife's separate argument that Plaintiffs' Amended Complaint should be dismissed because it essentially seeks money damages, which are not cognizable under ERISA.  However, for reasons that will become clear in this Opinion, I need not squarely address that issue here.

[6] At oral argument, MetLife argued for the first time that upon the establishment and funding of the Plaintiffs' TCA's, MetLife ceased to be a fiduciary and a "new relationship" was formed between MetLife and the Plaintiffs.  Tr. at 7:5-25, 19:18-21:2.  This argument is made nowhere in any of MetLife's papers; indeed, it appears by the arguments made in the briefs that MetLife implicitly conceded that it was a fiduciary, but it argued that it had not breached the duties it owed as such.  This new argument, having been raised for the first time at oral argument, need not and will not be considered here.  *See In re Monster Worldwide, Inc. Sec. Litig.*, 251 F.R.D. 132, 137 (S.D.N.Y. 2008) ("[T]his argument was raised for the first time at oral argument and so was waived in terms of this motion."); *accord Smith v. Cuomo*, 306 Fed.

Plans provide for the payment of death benefits to beneficiaries such as Plaintiffs by the establishment of a TCA and the issuance of a checkbook, and because MetLife complied with the express terms of the Plans, it claims that it is immunized from liability under ERISA. To be sure, ERISA does provide that a fiduciary must discharge its duties "in accordance with the documents and instruments governing the plan," but that same provision goes on to elucidate that this obligation to comply with terms of an ERISA plan extends only "insofar as such documents and instruments are consistent with the provisions of [ERISA]." *Id.* § 1104(a)(1)(D).

Thus, the fact that the Kodak and GM Plans provided for distribution of death benefits through the establishment of a TCA, and that MetLife complied with those provisions, does not in itself immunize MetLife from liability here. What does prevent a claim for breach of fiduciary duties here, however, is the simple fact that Plaintiffs received all of the benefits to which they were entitled under the Plans. What the Court must focus on here is the parties' expectations under the Plans at issue – as one court aptly recognized, "ERISA does no more than protect the benefits which are due an employee under a plan." *Bennett v. Conrail Matched Sav. Plan Admin. Comm.*, 168 F.3d 671, 677 (3d Cir. 1999). ERISA does not, however "create an exclusive duty to maximize pecuniary benefits." *Collins v. Pension & Ins. Comm. of So. Cal. Rock Prods. & Ready Mixed Concrete Ass'ns*, 144 F.3d 1279, 1282 (9th Cir. 1998). Thus, where a fiduciary complies with a plan's lawful terms and provides the beneficiaries the benefits they were due under the plan, there is no violation of § 1104(a)'s "exclusive purpose" requirement. *See Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090, 1100 (9th Cir. 2004). Here, Plaintiffs were provided all they were due under the Kodak and GM Plans, respectively, and in this context MetLife has done all that was required of it to serve ERISA's salutary remedial purpose – *i.e.*, to protect the interests of participants and beneficiaries in employee benefit plans. *See Slupinksi v. First Unum Life Ins. Co.*, 554 F.3d 38, 47 (2d Cir. 2009) (citing 29 U.S.C. § 1001(b); *Salovaara v. Eckert*, 222 F.3d 19, 31 (2d Cir. 2000)).[7] That Plaintiffs did not know or did not understand how the TCA's would

---

Appx. 645, 647 (2d Cir. 2009); *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 300 (2d Cir. 2006); *Moody v. Morris*, 608 F. Supp. 2d 575, 580 n.1 (S.D.N.Y. 2009).

[7] Plaintiffs rely in part on the First Circuit's recent holding in *Mogel v. UNUM Life Ins. Co. of Am.*, 547 F.3d 23 (1st Cir. 2008), which held that "UNUM cannot be said to have completed its fiduciary duty under the plan when it set up the [retained asset accounts] and mailed the checkbooks, retaining for its use the funds due until they were withdrawn." *Id.* at 26. Although *Mogel* did involve a similar type of account as the TCA's involved in this case, Plaintiff's reliance on this case is misplaced. The plan at issue in *Mogel* expressly required UNUM to pay the beneficiaries via lump sum payment when their benefits vested. By contrast, here, the Kodak and GM Plans expressly required payment by TCA, by which Plaintiffs could have readily accessed the sum total of their death benefits at any time.

work, or that MetLife would retain certain funds for reinvestment until they were withdrawn, does not transform MetLife's conduct into a breach of fiduciary duty.[8]

Similarly, the Supreme Court has interpreted § 1106 to "prohibit [] fiduciaries from involving the plan and its assets in certain kinds of business deals . . . Congress enacted [§ 1106] to bar categorically a transaction *that [is] likely to injure the pension plan*." *Lockheed Corp. v. Spink*, 517 U.S. 882, 888 (1996) (emphasis added) (internal citation and quotation marks omitted). Plaintiffs have failed to allege any "injury to the plan" so as to state a claim under § 1106.

Consequently, in light of all the circumstances of this case, this Court finds that, although upon first glance it may appear that the letter of ERISA has been violated, the way in which MetLife administered Plaintiffs' TCA's complied with the purpose of ERISA and did not constitute a breach of fiduciary duties. While the Court expresses no opinion as to whether Plaintiffs might have a cause of action under some other theory (some words that Plaintiffs have used have included unjust enrichment, conversion and/or negligent or fraudulent misrepresentation), it is clear that Plaintiffs do not state a claim under ERISA for which relief may be granted, and the Amended Complaint must be dismissed.[9]

### D.     Dismissal of Class Action Claim

When a class representative's individual claims fail, "the class claims necessarily fail as well." *Porter v. Texaco, Inc.*, 985 F. Supp. 380, 381 n.1 (S.D.N.Y. 1997). As discussed herein, Plaintiffs fail to state a claim for breach of fiduciary duties under ERISA. Accordingly, the class action claims likewise are dismissed.

---

[8] Plaintiffs expressly disavow any claim that MetLife's alleged concealment of the way in which the TCA would work was itself a breach of duty, and they make no claim for misrepresentation; rather, their arguments relate only to their contention that this concealment was the "artifice through which MetLife concealed its violation of ERISA." *See* Plaintiffs' Opposition to MetLife's Motion to Dismiss at 11-12.

[9] Because the Court has determined that Plaintiffs' receipt of all bargained-for benefits under the Plans forecloses their claim for breach of fiduciary duty, I need not address MetLife's multitude of alternative arguments, including that the life insurance policies involved in this case are "guaranteed benefit policies" under ERISA § 1101(b)(2), or that Faber's claims are time-barred.

## III. CONCLUSION

For the foregoing reasons, MetLife's motion to dismiss the Amended Complaint is GRANTED. The Clerk of the Court is instructed to close all open motions and to close this case and remove it from my docket.

**IT IS SO ORDERED.**
New York, New York
October 23, 2009

_____
U.S.D.J.

12